## William P. Hummel and George F. McCandless v. City National Bank.

(Decided February 14, 1912.)

### Appeal from McCracken Circuit Court.

1. Contract—Action for Damages for Failure to Comply With—Pleading—Sufficiency of Petition.—In an action to recover damages for an alleged breach of a building contract, the petition failing to allege that the parties contracting to construct the building were ready, willing or able to perform the contract, or that they had assigned it to one who was ready, willing or able to perform it, a demurrer to the petition was properly sustained.

2. Same—The petition seeks a recovery because of the alleged failure of the bank to enter into a contract with the construction company, and no assignment by appellants to the construction company being shown, the petition was defective in that particular. Had such an assignment been shown the right to recover damages would have passed as an incident of the contract to the construction company.

BERRY & GRASSHAM and FRED FORCHT, JR., for appellant.

WHEELER & HUGHES for appellee.

Opinion of the Court by Judge Winn—Affirming.

On July 3, 1909, appellants and appellee entered into a written contract in the following terms:

"Paducah, Ky., July 3d, 1909.

"This agreement and contract entered into by and between the City National Bank, party of the first part, and W. P. Hummell and George F. McCandless, parties of the second part, all of the city of Paducah, Ky.

WITNESSETH:—Party of the first part being the owner of a certain plot of ground, situated on the northeast corner of Broadway and Fourth streets, in the city of Paducah, Kentucky, fronting about 73 feet on Broadway and having a depth of 115 feet on Fourth street, and it being the desire and intention to erect or have erected on said plot of ground, a building of not less than eight stories in height, and as the parties of the second part have submitted to said party of the first part certain propositions looking toward the erection of a building on said ground, and one of said propositions having been accepted and approved by the board of directors of said City National Bank, therefore, the following is agreed to by and between the parties hereto signing.

"The City National Bank agrees, after the conditions hereinafter stipulated have been complied with, to lease to the parties of the second part, their heirs or assigns, the plot of ground above described for a period of ninety-nine years from the time possession of the property is given to lessee, same to be January 3, 1909, and agrees to pay all State, county and city taxes on said ground and building during the full time of said lease, parties of the second part, their heirs or assigns to erect on the full plot of ground above described, a building of not less than eight stories in height, to be of modern steel, stone and brick construction, the upper floors, above the first, to be constructed into offices, and to have not less than two elevators, and to maintain satisfactory janitor and elevator service, and the party of the first part to have the use of the corner room, which is to be about 28x95 feet, rent free, with heat and water furnished for the full term of said lease, and the parties of the second part, their heirs and assigns shall pay to the party of the first part, their successors or assigns an annual rental of $4,000 for the full period of said lease,

payable semi-annually, same to be in full satisfaction of all claims on account of said lease referred to above, it is understood that the first floor of said building shall not be less than 18 feet to the ceiling, and the corner room, to be occupied by the bank, to be the height of the first and second floors or about 28 feet to the ceiling, it is also agreed that said building shall be equipped with modern heating and lighting connections throughout the entire building, both gas and electric; it is also agreed that when said building is erected and completed it shall be known as the CITY NATIONAL BANK BUILDING, or such other name as said bank may want so long as any part of it is occupied by said bank for banking purposes, the parties of the second part agree that they will submit to the City National Bank Directors plans of the proposed building for their approval, it being understood that not less than $175,000 shall be expended in the erection of said building, and it is further agreed that before the lease is signed, parties of the second part, their heirs or assigns, shall deposit or furnish satisfactory cash, security or bond in the sum of $20,000 that they will carry out faithfully the contract of the erection of said building, same to be forfeited to party of the first part in case of failure to comply with said contract, it is agreed that parties of the second part shall have until the fourth day of September, 1909, to furnish said parties of the first part evidence that they have a party or parties that will erect said building, and when such evidence has been furnished, shall have thirty days thereafter to submit plans and make the deposits above referred to, and shall have the building completed within eighteen months from January 3, 1910, unavoidable accidents, strikes and acts of God excepted, the period meaning eighteen months workable days. It is understood that the buildings now on the property are to become the property of the parties of the second part without cost when the lease is signed, and at the end of the lease the building and all appurtenances to be the property of the first part, its successors or assigns.

"In order that the officers of the City National Bank may legally sign this contract, the board of directors shall meet and approve the signing of this contract by proper resolution, both contract and resolution being spread upon the minutes of said meeting and a certified

copy of the resolution to be furnished said parties of the second part.

(Signed)   "City National Bank of Paducah, Ky.,
          "By Sam'l. B. Hughes, Pst.,
          "J. C. Utterback, Cashier.
"W. P. Hummel,
"George F. McCandless."

By subsequent written modifications the date of September 4, 1909, was set forward to November 4, 1909. The bank also at a later date agreed that it would purchase a fifty thousand dollar second mortgage bond issue upon the building, the proceeds of which might be used to facilitate the erection of the building.

In November, 1910, Hummel and McCandless. brought this action against the bank to recover damages in the sum of $75,000 for an alleged breach of the contract. Later an amended petition was filed. To the petition as amended demurrer was sustained and judgment entered dismissing the petition. The plaintiffs appeal here.

The only matter for review is the sufficiency of the petition. Doubtless if there were before us the details of the certain proposition submitted to and accepted by the bank, as recited in the first paragraph of the contract, our consideration of the question would be much simplified. The parties and counsel below, of course, were familiar with what was actually in the minds of the contracting parties, and with the negotiations leading up to the contract. This knowledge has evidently entered into the treatment of the case, the framing of the pleadings, and the briefs of counsel. From them we gather that the spirit of the transaction was one somewhat of promotion or brokerage in nature on the part of the appellants; i. e., that they were to devote their time and energy to procuring some suitable and financially responsible party to enter into a contract with the bank for the erection of the building along the general lines, and upon the general terms named in the contract. Upon such a theory the plaintiffs laid their case; since they allege in substance that they procured a party or parties who were ready, able, and willing to enter into and carry out such a contract with the bank. The contract itself is not susceptible of this construction; and since the action is predicated upon the very terms of the contract, the sufficiency of the petition must depend upon whether

plaintiffs have set up such a state of fact as warrants a recovery by them under the provisions of the contract.

The provisions of the contract do not admit of any brokerage or intermediary construction. The contract recites that the "parties of the second part, their heirs or assigns" are to erect the building. It recites that "the parties of the second part, their heirs or assigns, shall pay to the party of the first part an annual rental of $4,000." It recites that "parties of the second part, their heirs or assigns, shall deposit or furnish satisfactory cash, security or bond." It recites that the bank will release the ground to "the parties of the second part, their heirs or assigns." It recites that the buildings on the property "are to become the property of the parties of the second part without cost when the lease is signed." It recites that "the parties of the second part agree that they will submit * *· * plans of the proposed building for their approval." The use of the term "assigns" by necessary implication meant that Hummel and McCandless had the right to assign the benefits of the contract to some proper third party. It was their option either to perform in person, or to assign their contract to another and step out of the way. The provision in the contract that they should have until a certain day to furnish evidence that they had a party who would erect the building, must be read in connection with the rest of the contract. When so read it means either simply that Hummel and McCandless, themselves performing, had procured a suitable constructor to do the work for them, or that they had brought an assignee to be substituted for, and perform in, their place.

Their petition nowhere alleges either that Hummel and McCandless were ready, able, or willing to perform; or that they had assigned the contract to any one who was ready, able or willing to perform. Per contra, they allege that "they procured and interested in the project" a construction company of Louisville; that they brought this company in connection with the bank, and that the "company" was ready and willing and able to enter into a contract upon terms satisfactory to the defendant;" that the bank refused "to close any deal" with the construction company, or with other parties that the plaintiffs had ready to enter into a contract; that the bank had broken its contract with them and had taken advantage of their energy expended and money spent in plac-

ing the construction company in connection with the bank; and that the construction company was ready, able and willing to carry into effect a contract such as was contemplated between plaintiffs and defendant.

Now it is obvious that had the plaintiffs alleged their own readiness, ability and willingness to perform the contract, and a refusal by the bank to carry out the contract with them, they would have stated a cause of action. On the other hand, had they alleged the other only alternative provided for in the contract, i. e., that an assignee of their rights was ready, able and willing to perform, then they would have set out a state of fact upon which they could not recover against the bank; for the right of action in case of the bank's breach, would have been in the assignee, holding by virtue of the assignment, every right in the contract which Hummel and McCandless had before the assignment. The petition sets out neither of these states of facts. It endeavors to sustain a right of recovery in the plaintiffs, not because of any failure of the bank to meet them in their readiness to perform, but because of the alleged failure of the bank to enter into a contract with the construction company—a contract which the bank was under no obligation to make, unless that company, by assignment from Hummel and McCandless, stood in their place. And as above suggested, had such an assignment been shown, the right to recover damages would have passed as an incident of the contract, to the construction company. It follows that the demurrer to the petition was properly sustained.

We can not read into the contract an interpretation of brokerage, though as said in the beginning, this may have been the intent of the parties. The probability of such intent is strongly evidenced by an additional undated document found in the record, which is in words and figures as follows:

"Paducah, Ky., July ———, 1909.

"Whereas, the City National Bank of Paducah, Ky., and W. P. Hummel and George F. McCandless have entered into a certain contract by which said Hummel and McCandless, their heirs or assigns, will undertake to erect an eight story building, corner Fourth and Broadway streets, in Paducah, Ky., or that they will make effort to secure some one else to undertake the erection of such a building, therefore it is agreed be-

tween the parties signing hereto that when said Hummel and McCandless have furnished satisfactory evidence that said building will be erected and the security, namely $20,000, mentioned in said contract, has been deposited as agreed to, then there shall become due and payable to said Hummel and McCandless the sum of $1,000.

"CITY NATIONAL BANK,
"By .SAM'L B. HUGHES, President.
Attest: JAS. C. UTTERBACK, Cashier."

The bank said in substance by this document that if Hummel and McCandless procured some one else to undertake the erection of the building, it would pay them $1,000 for their activity and trouble. So much of the plaintiffs' petition as sought a recovery of this $1,000 was dismissed without prejudice on their motion. This document, put into the record by plaintiffs, is calculated to create the belief that for procuring a substituted performer, the plaintiffs should look to this subsidiary document alone for their pay in so far as the bank was concerned. In addition, they had their opportunity for the profit in selling their contract rights to an assignee secured by them.

The discussion, of necessity, in treating of the sufficiency of the petition, has treated its allegations as true. Neither its remarks upon the facts, nor the suggestion of what may have been in the contemplation of the parties, will affect future controversies, if any, arising out of this matter.

For the reasons given the judgment is affirmed.